Good morning, Your Honors, and may it please the Court. I think that the appropriate outcome for this case is a new trial on Counts 6 and 7 and a remand for further proceedings concerning the discovery violations on Counts 3 through 5. Focusing first on the strongest argument, which is Count 7, Karami, Agent Karami, who discovered the CDs that underlie Count 7, was not able to identify them as the specific CDs that she recovered. She said, I was in room D, I found a spindle and maybe some loose CDs, and I gave them to Agent Perez. When those CDs are presented at trial, there's no further foundation, no handwriting analysis, no fingerprint analysis, and there's lots of suspects in this house. There's 38 boxes, large boxes, of evidence that are recovered. They are strewn throughout the entire house. There are other residents of the house, including my client's brother. When did she find the CD in room D? She said she found the CDs in room D. The record is not clear that that was his room, that he had exclusive possession or control of that room. The record is, and I'll just focus on room 7, but that is how it's referred to as his room, but in the evidence, nobody lays the foundation that that is Robert Ornelas' room, he has clear custody and control of it, that's not there in the record. But even if that were in the record, once she finds these CDs, she hands them to Agent Perez, and we don't know what happens to them after that because Agent Perez was not there to testify. Chain of custody, it's an aspect of authentication. The purpose is to say this is the same item, and it's in the same condition. And defense counsel was denied the opportunity to challenge Perez's role in that chain of custody. The man had committed suicide, and it was from the stress of this case. And the entire defense was focused on the chain of custody and the competence of this investigation. That is, that was a legitimate focus. This case is amazingly troubling on so many levels, not just the subject matter, but also Agent Perez. And the district court was very... The trouble that I'm having with your argument is that this would not be the first trial where the government did not perfectly close every little loop in chain of custody. And so potentially an inference can be drawn that maybe the broken link has some significance, and that was up to defense counsel to argue that. Now, since that... And you did argue that in this particular case, right? Challenging the chain of custody and arguing that there was no exclusive control, all the arguments that you're now raising, you had. The difference now is the subsequent discovery relating to the agent. And I don't know of anything in the record beyond just speculation that there was something more. And that's the problem. Despite the in-camera review, it's all speculation at this point. Well, it's a little bit. At the first trial, there was no evidence of the suicide because it was excluded, and defense counsel was not informed that this was a result of the stress from this case. After remand, defense counsel was informed of that and brought a new trial motion based on, hey, Agent Perez committed suicide, and it was based on the stress of this case, and we needed that particularly to challenge Count 7. Now, there's a third level to that, which is the government's response to the defense's discovery requests, which were very specific. The guys, the Agent Perez's sister said he had an exit interview on August 13th, and he had submitted his resignation. The government comes back and says, with a declaration from the AUSA saying, I spoke with a bunch of people and none of them have heard anything about it. But that's a very specific discovery demand for a very specific incident, and the government didn't meet its obligations to provide declarations from people with knowledge that they were checking with everybody who could potentially have knowledge on this very, very specific issue. So, my point is, when we're talking about items that don't involve JJ and Jen Jen, those would be the possession items. Mr. Ornelas has a right to a new trial, particularly on Count 7, because there is a legitimate issue as to whether those CDs that he was convicted of possessing were in fact discovered in his room. Then going beyond that, or in the room that the government says he possesses, and then even if they were discovered in there, like the computer underlying Count 6, there is a legitimate issue as to whether he had exclusive custody and control of that computer, and had exclusive custody and control of that room, so you can assume he put those things on that computer. When you don't have that, then a wild card in the mix like Agent Perez gives the defense a lot of room to argue, which they have never had the opportunity to do in this case. And I would just like to back up and talk about Judge Carney for a moment. Judge Carney, from the very beginning of this case, wanted to keep Agent Perez out of it. There was a, I think it was a November 16 or 17 hearing, or November 7, 2016 hearing, he was saddened and disappointed that he couldn't keep Agent Perez's death out of this. Then once the trial starts, he's actually questioning defense counsel's good faith for even attacking that, and he was focused on Agent Perez's privacy interest and the privacy interests of his family, which I admit are very weighty and make this case really sad. But they cannot outweigh a criminal defendant's right to due process and exculpatory evidence and Rule 16 right to material evidence on a trial where he's facing trial for his life. So I think that Judge Carney's conclusions should be, he had lost his objectivity in this case, and I think it just has to do with how terrible the facts of this case are, and it's terrible piled on top of terrible. And then... I mean, our case law says that courts can rely on a representation from the government, that they have done the investigation that they have been ordered to do, and that they have found nothing. And courts are allowed to rely on that. I mean, that is a real hard proposition for you. No, I don't think so, Your Honor, because I think Jennings said that the government can rely on affidavits from people in a position to know. These aren't affidavits from law enforcement. I think Jennings is... Is that a procedural argument that the government didn't present its answer in the right format? No. They're not under oath statements by the law enforcement officers who looked. They're not under oath statements of what they looked for, and they're not under oath statements that they are the relevant pool of people that should be asked this question. So is Jennings your best authority, for that's what the government's obligation is to do? No, that's to distinguish Jennings, and then to distinguish Lucas, which is the other main case. So let's stop distinguishing. Tell me the affirmative case that you have that supports the idea that the government's obligation is to do what you just described. Pennsylvania v. Ritchie is when a defense counsel makes a very specific... Identifies specific exculpatory information that they believe exists, the government or the court can order its production under Rule 16. So... Okay, well, that doesn't answer my question. That the court can order production doesn't tell me that in responding to that order, the government's obligation is to send affidavits or declarations describing exactly what they did in response when they found nothing. In the... Under the context of this case, I believe they need to do it. Okay, so you don't have authority. This is your argument for this case. I have the authority that is in my brief. I have the authority that is in my reply. I cannot point the court to one particular case right now. I was mainly focused on the government's cases that seemed to say the contrary in which the district court cited, and for the reasons I've stated, I don't believe they do. Okay. And then going to counts three through five, I think those should be remanded for further investigation or for the government to actually respond the way that is required to these very specific discovery requests because the issue there is transportation from the Philippines to the United States. These images were obviously transported, but who actually did the transporting is an issue, and whoever possessed them is very relevant to who transported them. So if there's an argument that somebody else transported them, then Mr. Ornelas would be entitled to a new trial on those counts as well. But I think three through five should await further proceedings in the district court where the government meets its discovery obligations. I think counts one through two are off the table. And that's also one other thing. When Judge Carney completely rejected this, he rejected a straw man. He focused on counts one through two, like this evidence would show somebody went to the Philippines and made all of this stuff up, and that wasn't the argument at all. The argument is this stuff is relevant to chain of custody, chain of custody is relevant to possession, and possession is relevant to transportation. And with that, I would like to reserve the balance of my time. Thank you, counsel. May it please the court. Ilana Artzen on behalf of the United States. In the prior appeal, the panel ruled that at least some in-camera information met the low standard of materiality under Rule 16. It ordered disclosure of the in-camera materials, and it remanded to provide an opportunity for the  defense counsel to try to show that this newly discovered material would have altered the outcome of the trial. The defendant had that opportunity, and the district court did not err in finding that the new material was so minimal that it did not, that the defendant could not make the requisite showing that it would have altered the trial. Again, before trial, the defense knew that Agent Perez's death was due to suicide. So the new information in the in-camera material was first AUSA Willett's declaration as to what the government did before trial. And that was to confer with the agency, and her declaration at 6ER 992 was that Agent Perez never submitted a resignation letter to the agency. So there was no resignation letter. There was no exit interview. The new information was simply that the suicide was due to unspecified work and case-related stress. So the question before the district court was, does that new fact suggest that the jury would have seen the entire case in a completely different light? And the answer to that is clearly no, because the agent had a minimal role in the search. There was overwhelming evidence of guilt, and ultimately this had very little probative value, because it was based on the idea that this new idea, this new material, would provide an opportunity perhaps to find some other information. The defense counsel was looking for information that Agent Perez had engaged in some misconduct, or had some very serious mental health problems. That evidence simply doesn't exist. All we have is this unspecified case-related stress. So let me talk specifically about Counts 6 and 7. So again, the defendant says Counts 1 and 2 are off the table. The evidence was overwhelming. The two victims testified. The defendant is seen and heard in those videos, and their testimony was corroborated by the chat logs found in the home, by passport and airline records, records showing that the defendant had sent money to one of the victims and her aunts, the expert testimony that these images weren't altered. Counts 6 and 7 involved a number of images of child pornography, including images of Jeanne. In Counts 6, there were two images that were found on the same computer, in the same folder as the three videos underlying Counts 1 to 5. It included additional CP of Jeanne's model's rear, and that Jeanne and Junalyn Tacloban. Well, there's a connection between Counts 6 and 7, so that's why I want to talk a little bit about Counts 6. So we have great reason to believe that the child pornography in Counts 6 is possessed by the same person as Counts 1 to 5, and that was the defendant. Now, Counts 7, again, those images included Jeanne. There were two images in a folder called Jeanne the hottie, and those two pictures were on one of these disks. So again, who's connected to Jeanne? The defendant. As to Counts 6 and 7, there were also two other very significant pieces of evidence. I'm sorry, there's another significant piece of evidence. First, at the same image of the same victim. Secondly, the defendant made a post-arrest statement, and in that statement, he essentially admitted that this was his collection. That's Exhibit 65 that was played at trial. The transcript of that is not in the excerpts, but I would be happy to submit it to the court. But during that interview, the defendant acknowledged when the agent asked about all of the videos and images, he said, well, you're talking to me, one who saw it, but you should really be going after the people who put this up on the websites. And later in the interview, when talking about this collection, the defendant said, well, a lot of them are old and should have been thrown away years ago. So there was really overwhelming evidence tying the defendant, regardless of what room or exactly where these items were found, there was a lot of evidence tying defendant to Counts 6 and 7. Again, the agents who testified, Agent Karame testified about the CDs, Agent Kennedy testified about the computers, and both of them said, I found these in room D, which was defendant's room, and I wrote on the evidence tag where I found it. That is my handwriting. And then Agent Karame said, I took the CDs to Agent Perez, he gave me a bag, and together we sealed it. So the question in this case is not whether there is some issue about the chain of custody. Clearly, just the jury knew that Agent Perez was dead, and defendant argued that there was a missing link. He argued, we don't know what happens after Agent Perez. The question is, what does any of that have to do with Agent Perez and his suicide? And I submit that the answer is essentially nothing. Because defendant's entire argument was based on the notion that there is something else there. There's something in that exit interview. There's something in that resignation letter. There's somebody who, you know, knew something about this. That evidence simply does not exist. The evidence that was in the record, because there was overwhelming evidence of guilt, the agent had a minimal role, and this new evidence was a very low probative value. The district court did not err. With respect to discovery, Agent Forrest, you are correct. There is no case law that requires, in every case, the government to provide a declaration as to what it did. The district court did not abuse its broad discretion in relying on the government's representation. Instead, what Lucas said is that mere speculation that Brady material exists is not enough, and to challenge the government's representation, the defendant has to make a concrete demonstration that there is some favorable evidence withheld. There was no such demonstration here, and therefore the district court did not abuse its discretion. Does the court have any further questions? It doesn't appear that we do. Thank you. If the court has no further questions, then we would submit that this saga has gone on for close to 20 years. The court should affirm. Thank you, counsel. Thank you. I'd just like to point out there's, so far, the government is right. There's nothing more than a suicide on, for stress, work-related stress, related to this case. I submit that is a lot, and there is specific, non-speculative evidence that this gentleman had an exit interview on, I believe it was October 13th, and actually submitted a resignation letter, so met with people. There has been an insufficient response to find that evidence, and in terms of Agent Karame, she did not recall meeting with Perez. She recalled she found this stuff, she put it in a bag, she had no specific recollection of ever with Perez. And for Agent Perez, they continually refer to it as a ministerial or a minimum role, but it is a really, really important role. He held on to all the evidence from this massive search for some indeterminate period of time, and again, that raises, I submit, issues with chain of custody, but with that, I will submit, unless the court has any questions. I appreciate your argument. Thank you very much, counsel, both sides. The matter is submitted, and that concludes our argument calendar this morning. We'll be in recess until 9 a.m. tomorrow.
judges: NGUYEN, FORREST, VANDYKE